**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE. NO. 22-cr-160-CJN** |
| | : | |
| | : | |
| **CHARLES CLARK** | : | |
| **Defendant.** | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in sentencing the defendant, Charles Clark, for sexually abusing a young girl entrusted to his care. The United States asks the Court to sentence the defendant to 260 months of incarceration, followed by a lifetime of supervised release, and to run the defendant's sentence concurrent to the sentence imposed in the related case in Charles County, Maryland. Such a sentence, which is in the middle of the defendant's Sentencing Guidelines' range, balances the factors outlined in 18 U.S.C. § 3553(a) and is "sufficient, but not greater than necessary to comply with the purposes of sentencing," and will provide long-term protection to the community from potential future crimes by the defendant. At sentencing, the United States may additionally request that the Court order the defendant to pay restitution to the minor victim in this case for the full amount of her losses.

## I. Background

In June of 2017, at the approximate age of 60, the defendant targeted the 13-year-old daughter of his girlfriend, Minor Victim 1 (MV1), subjecting her to repeated rape and sexual abuse over a period of approximately five years. Despite being a "father-figure" to this girl, and despite having helped raise her from early childhood, the defendant sexually abused MV1 between 170-

200 times during those years: vaginally penetrating her, even when she wanted him to stop, requiring her to put her mouth on his penis, and manipulating her into satisfying his sexual predilections by buying her gifts and promising freedom that she normally would not be allowed at home.

The defendant's abuse of MV1 began when she was 13 years old, during a time when the defendant was living with MV1 and her mother in Washington D.C. The defendant, who was in a romantic relationship with MV1's mother, stayed in the family's home during the week and would return to his own home in Maryland on the weekends. After multiple incidents in which the defendant touched MV1 on her buttocks, one day he asked her to meet him in her mother's bedroom while her mother was gone. There, he vaginally penetrated MV1 with his penis for the first time in an incident in which MV1 described that the defendant "kinda forced himself on" her. Following that, the defendant would sexually abuse MV1 at her own home in Washington D.C. on almost a daily basis until the defendant and MV1's mother ended their relationship in 2019. After that, the defendant continued to sexually abuse MV1 on occasion at his home in Waldorf, Maryland. The defendant, who was able to draw on the sympathies of MV1's mother after he received a significant health diagnosis at the age of 60, convinced MV1's mother to allow MV1 to come to his residence alone ostensibly to "help" around the house. The abuse took place regularly between the time MV1 was 13, through age 17, at both homes.

During the duration of the abuse, the defendant would manipulate MV1 by buying her things, including clothes, shoes, and a cell phone. These items, however, where not "free" to MV1, but came with the expectation that MV1 would continue to satisfy the defendant sexually in exchange and "keep her mouth shut." For example, after the defendant purchased a cellphone for MV1, he later refused to pay the bill on the phone because he believed MV1 was using the phone

to talk to boys her own age. The defendant also purchased lingerie for MV1, even photographing her wearing it at his request.

While the abuse was ongoing, the defendant and MV1 would sometimes communicate via Instagram direct messaging and the internet. Starting in 2020, the defendant demanded that MV1 send sexually explicit images of herself to him, which she did on at least two occasions. On February 19, 2021, the defendant asked MV1 via Instagram "How soon before I get my pictures please take a picture of that pussy and that ass." Again, on March 10, 2021, the defendant wrote, "I need a picture with your legs up titties and that pretty pussy showing in your face after 4 years you know you can trust me." When MV1 initially refused, the defendant stepped up his efforts at manipulating her by saying "so evidently I'm not getting my picture so do I see this or what $1,000 phone in shoes you been wasting my money for quite a while and now owning up to your obligations as a GF."

Shortly thereafter, MV1 disclosed the ongoing abuse to her mother, who immediately reported to law enforcement. Law enforcement, with MV1's permission, then took over MV1's Instagram account and began messaging with the defendant. The defendant openly acknowledged that he and MV1 had been together for 5 years and that she "gave [him] the most precious thing a woman can give a man." When asked what that was, the defendant responded that MV1 gave him her "virginity." When asked if he was happy he was her "first" at the age of 13, the defendant responded responded, "Hell yeah I cherish that shit to my heart." He later sent her a photograph of his penis saying, "If this don't help you masturbate nothing will."

On October 11, 2022, the defendant entered a plea of guilty to one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), in the instant case. On March 30, 2023, he pled guilty in the related case in Charles County, Maryland, to one count of Sexual Abuse

of a Minor/Continuing Conduct, and one count of Sexual Abuse of a Minor. On December 7, 2023, the defendant was sentenced in Charles County, Maryland, to a total term of 45 years of incarceration. Sentencing in the instant case is scheduled for April 3, 2024.

## II. A Sentence at the Mid-Range of the Defendant's Sentencing Guidelines Appropriately Reflects the § 3553(a) Factors

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1] These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(3) the kinds of sentences available;
(4) the applicable sentencing guidelines range for the offense;
(5) pertinent policy statements issued by the U.S. Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

---

[1] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

Here, the United States submits that a sentence of 260 months of incarceration and lifetime supervised release, to run concurrent with the defendant's Maryland sentence, reasonably accounts for the factors established in § 3553.

**A. The Nature and Circumstances of the Offense**

The defendant's profound betrayal of trust – raping and manipulating a young teen who had been entrusted to his care – warrants a very significant sentence. The defendant was a "father figure" who had lived with and helped to raise MV1 beginning in early childhood. As MV1's mother described in her Victim Impact Statement, "Charles was with us when she did not have two front teeth." *See*, Victim Impact Statement of J.G., filed under seal. Prior to abusing MV1, the defendant was an integral and beloved member of the family. As J.G. explained, "As time progressed, I trusted him with my children. I allowed them to go to his house and assist him with chores because he was too weak to do it alone. I trusted him to pick them up from school and watch them overnight when claimed he was sick and cold not drive back home." *Id.*

Instead of being a true "father-figure" and using his role protect MV1 he, instead, trampled on that trust and used MV1 for his own sexual satisfaction. Beginning with touching her buttocks – a tactic consistent with the grooming of children – the defendant then used his authority as a father-figure to summon MV1 to an empty bedroom at the age of 13, where he raped her for the first time. As if this were not betrayal enough, he raped the girl in the bedroom of her own mother, a woman that the defendant was supposedly in a romantic relationship with. From that time, the defendant regularly engaged in the sexual abuse of MV1 with the abuse occurring, at times, almost daily, and continuing until she was 17 years old. To ensure that he would not be found out, the defendant attempted to buy MV1's silence with clothes, shoes, and a cell phone. The defendant

also sought to create divisions between MV1 and her mother, making it only more difficult for MV1 to seek out someone trustworthy who she could turn to.

Research on the effects of sexual abuse on a developing child suggest that early trauma, including sexual abuse, may interfere with brain development, and can produce various neuropsychiatric symptoms commonly associated with drug use. *See* Anderson, C. M., Teicher, M. H., Polcari, A., & Renshaw, P. F. (2002): Abnormal T2 relaxation time in the cerebellar vermis of adults sexually abused in childhood: Potential role of the vermis in stress-enhanced risk for drug abuse. *Psychoneuroendocrinology, 27*, 231-244; Baynard, V. L., Williams, L. M., & Siegel, J. A. (2001): The long-term mental health consequences of child sexual abuse: An exploratory study of the impact of multiple traumas in a sample of women. *Journal of Traumatic Stress, 14*(4), 697-715 (noting that child sexual abuse victims reported a lifetime history of more exposure to various traumas and higher levels of mental health symptoms). Other studies have found that individuals who suffer sexual abuse in their childhood years have a higher rate of anxiety, disruptive behaviors, substance abuse, and personality disorders compared to others who may have experienced other forms of abuse or neglect. *See* Cohen, P., Brown, J., & Smailes, E. (2001): Child abuse and neglect and the development of mental disorders in the general population. *Development and Psychopathology, 13*, 981-999; Dube, S. R., Anda, R. F., Felitti, V. J., Chapman, D. P., Williamson, D. F., & Giles, W.H.(2001): Childhood abuse, household dysfunction, and the risk of attempted suicide throughout the life span: Findings from the adverse childhood experiences study. *JAMA, 286*(24), 3089-3096 (noting that a powerful relationship exists between adverse childhood experiences and risk of attempted suicide through the life span); Merrill, L. L., Thomsen, C. J., Sinclair, B. B., Gold, S. R., & Milner, J. S. (2001): Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping

strategies. *Journal of Consulting and Clinical Psychology, 69*(6), 992-1006 (child sexual abuse is a significant predictor of long-term psychological difficulties ranging from depression and anxiety to sexual problems and dissociative symptomatology). Research also indicates that sexually abused adolescents are at an increased arrest rate for sex crimes and prostitution and are at an increased risk for earlier pregnancy. *See* Putnam, F. W. (2003): Ten-year research update review: Child sexual abuse. *Journal of the American Academy of Child and Adolescent Psychiatry, 42*(3).

Additionally, survivors of childhood sexual abuse often experience intense feelings of guilt and shame that can affect their capacity to develop meaningful present and future relationships, and can result in more guarded and cautious interactions with peers and other adults. *See* Raymond E. Webster, Symptoms and Long-Term Outcomes for Children Who Have Been Sexually Assaulted, 38 Psych. in the Schools 533, 536–39 (2001). These children often develop symptoms associated with post-traumatic stress disorder (PTSD), including general agitation, behavior disorganization, and frightening nightmares. *Id.* at 537. Children who are particularly young or rely on the perpetrator for things like emotional support can suffer particularly severe trauma that intensifies their fears, causes emotional confusion, and impedes their ability to trust others. *See id.* at 538–39. Although family support and parental understanding can mitigate some of these long-term issues, the trauma of abuse can also "overwhelm" even "an essentially healthy functioning child who resides in a reasonably well-functioning home because [it] can disrupt the primary protective factors (such as friends, caretakers, extended family, familiar neighborhood) that protected the child initially." Webster, Symptoms and Long-Term Outcomes, at 540.

The defendant's sexual abuse of MV1 shows a brazen disregard for the wellbeing of a child entrusted to his care for the singular purpose of satisfying his own sexual desires. A sentence of

260 months of incarceration, followed by a lifetime of supervised release, would reflect the gravity of the defendant's conduct and the long-term harm that he has caused to a child who trusted him.

**B. History and Characteristics of the Defendant**

The defendant's history – including his health, age, lack of criminal history, and long-term employment – supports a sentence at middle of his Sentencing Guidelines range. By all accounts defendant Clark lived a law-abiding and productive life until the age of 60, when he began sexually abusing MV1. Before that time, he was employed full time as a shipping supervisor with the Department of State, where he had a top-secret security clearance and earned an annual income of $130,000. ECF No. 55, PSR ¶ 79. While this speaks well of the defendant's work ethic, it does not mitigate his conduct here and should not be viewed as a basis for varying from the Sentencing Guidelines.

Additionally, there is nothing about the defendant's history or characteristics that suggests a departure from the Sentencing Guidelines is warranted. The United States strongly opposes the suggestion made in the Presentence Report that the defendant's age and medical condition may form the basis for a downward departure pursuant to U.S.S.G. § 5H1.1 and § 5H1.4. The Court should not depart downward from the Sentencing Guidelines here, where neither the defendant's age nor medical condition prevented him from perpetrating a serious crime over the course of years against a minor. At the age of 60, the defendant was diagnosed with a significant health issue for which he will require lifelong care. ECF No. 55, PSR ¶ 64. Significantly, it was around that same time period that he began abusing MV1 and continued that abuse for almost 5 years. During the course of that abuse, the defendant used his age and illness to prey on the sympathies of MV1's mother and to manipulate her into allowing MV1 to come to his Maryland residence – alone, where she had no protection – so that he could sexually abuse MV1. Despite his age and illness, the

defendant was still physically capable of engaging in the sexual abuse of MV1. Despite his age and illness, the defendant still manipulated her by dangling material things, like a phone and clothes, to buy her silence. Despite his age and illness, the defendant was still physically capable of demanding sexually explicit images from MV1 while sitting in front of a computer and using his own Instagram account. And, finally, despite his age and illness, he still managed to send obscene photos of his genitalia to MV1 in an effort to sexually arouse her. The Court should reject any effort by the defendant to now use his age and illness to shield him from the consequences of his actions.

A mid-range sentence of 260 months, concurrent with the defendant's Maryland sentence, appropriately balances the § 3553 factors by taking into account the defendant's history of sexually abusing a young teen for close to five years. A departure is not warranted here, particularly where the defendant committed the offense after reaching the age of 60, and even after he had been diagnosed with a significant medical condition.

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense**

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

The sexual abuse of a minor is a serious offense that can have detrimental effects on the victim both in the long and short term. As MV1 wrote in her statement to the Court,

> I wouldn't wish any of this on my worst enemy. Imagine coming home from school everyday and have to be sexually assaulted. Imagine feeling like you have nobody by yourself. Imagine feeling like nobody will believe you. Imagine your mom's boyfriend taking your virginity at the age of 13. Imagine feeling like the person that's hurting you is the only one by your side. Imagine wanting to harm yourself because you feel like you deserve everything that's happened to you.

Victim Impact Statement of MV1, filed under seal. As this agonized statement makes clear, MV1 will be struggling with the aftermath of the defendant's abuse for many years to come. A sentence of 260 months incarceration and a lifetime of supervised release would reflect the seriousness of the offense and punishment for the long-term damage that the defendant has caused.

**D. The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). Here, a sentence of 260 months will deter the defendant from future crimes, as well as others who may be inclined to sexually abuse minors. This sentence, which is at the middle of the defendant's guidelines range, is appropriate given the defendant's long-term abuse of MV1. This was not a crime of opportunity or a one-time lapse in judgement. Rather, the defendant engaged in a years-long course of conduct to sexually abuse a young teen entrusted to his care.

Further, the defendant now appears to minimize his conduct and to shift the blame, suggesting that he may not be deterred from engaging in similar conduct in the future. As an adult with parental authority over MV1, he was in a position of power over MV1 which he abused in

order to gratify his own sexual desires. Instead of recognizing his full culpability, he attempts to point to the minor victim and her mother, claiming they somehow instigated the sexual abuse he engaged in. As described in the evaluation conducted by Irene Guya-Allen, the defendant claimed that MV1 "was enticing me, feeding me and coming on to me by walking around the house nearly naked in a bra and underwear and telling me encouraging words when her mother was not. I was also in a toxic relationship." *Evaluation*, Guya-Allen, at 8. This attempted blame-shifting reflects a profound delusion on the part of the defendant and ignores the reality that a 60-year-old adult man is fully responsible for his own actions, despite what a 13-year-old girl might be wearing. The defendant's sentence should reflect this reality.

**E. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct**

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

The United States is seeking a Guideline's compliant sentence in this case, which is warranted by the defendant's conduct and history. The defendant's repeated and multi-year course

of conduct abusing MV1 sets him apart from others. A sentence at the mid-range of his Guidelines is appropriate and does not subject him to unwarranted disparities.[2]

**F. MV1 is Entitled to Restitution for the Full Amount of Her Losses**

MV1 is entitled to restitution for the full amount of the losses she suffered at the hands of the defendant. Title 18, U.S.C. § 2429 directs that "Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter." This includes Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), the offense to which the defendant pled guilty. Under the statute, the restitution order "shall" direct the defendant to pay the "full amount of the victim's losses." § 2429(b)(1). In turn, the "full amount of the victim's losses" is defined as any costs incurred by the victim for:

> (A) Medical services relating to physical, psychiatric, or psychological care;
> (B) Physical and occupational therapy or rehabilitation;
> (C) Necessary transportation, temporary housing, and child care expenses;
> (D) Lost income;
> (E) Attorneys' fees, as well as other costs incurred; and
> (F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Here, in consultation with MV1 and her mother, the United States may submit a restitution request at the time of sentencing to address the losses caused by the defendant's actions.

[2] Exhibit A includes comparative sentencing information from the Judiciary Sentencing Information (JSIN) platform for the Court's consideration.

## III. Conclusion

The Government submits that a sentence of 260 months incarceration, at the middle of the defendant's Sentencing Guideline's range, and lifetime supervised release, to be run concurrent with the defendant's related sentence in Maryland, is reasonable in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Dated: March 27, 2024

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

_/s/_ *Jocelyn Bond*
Assistant United States Attorney
Jocelyn Bond
DC Bar No. 1008904
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530