IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:22-CR-00160 |
| ) | |
| ) | |
| CHARLES CLARK ) | |
| Defendant. ) | |
| _____) | |

## DEFENDANT'S POSITION ON SENTENCING

     Defendant Charles Clark, through counsel, respectfully submits the following Position on Sentencing. Mr. Clark has already been sentenced for the relevant conduct in this matter in Charles County, Maryland to a sentence that includes 45 years of incarceration. The circumstances of Mr. Clark's offense are unpleasant, but there are ample reasons, including Mr. Clark's age and physical health, for the Court to vary significantly below the bottom of the sentencing guidelines. Based on the factors set forth below, Mr. Clark respectfully requests that the Court impose the mandatory minimum sentence of 10 years, and run that sentence concurrent to that already imposed in Maryland. Such a sentence is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

### BACKGROUND

     Mr. Clark is a 67- year-old man in failing health who began a sexual relationship with a teenage girl. There is no legitimate excuse for his actions, and none will be offered here. While true that Mr. Clark was abusing marijuana and alcohol during the period of his crime—self-medicating his neurological condition—that condition in no way justifies his actions. Mr. Clark

1

has entered into a plea agreement with the government, and adopted the Statement of Facts, which outlines his wrongdoing in great detail. Mr. Clark does not dispute nor defend his actions. Mr. Clark will likely spend the remainder of his years behind bars regardless of what this Court does. Nevertheless, a concurrent sentence of 10 years—a significant downward variance—would represent an appropriate sentence here based on Mr. Clark's lack of criminal history, his age, and poor health. Imposing a concurrent sentence would be consistent with the Federal Sentencing Guidelines.[1]

## DISCUSSION

### I.     THE POST-*BOOKER* SENTENCING FRAMEWORK

Under Justice Breyer's majority opinion in *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. *See* 18 U.S.C. § 3553(a)(4)." *United States v. Booker*, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to *Booker*, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in *Booker* – sentencing courts should consider the need for the sentence imposed:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

---

[1] Under §5G1.3(b), if a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction, the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

2

> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above. Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

> Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the *Booker* majority:
> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of *Booker*, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After *Booker*, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one

factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 127 S.Ct. 2456 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Id.* The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.* By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita* at 2465. It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' *Gall* at 598 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

**II.     Applying the Sentencing Guidelines Would Result in a Sentence that is Excessive and Inappropriate Considering the 3553 Factors.**

The statutory penalty for a conviction under 18 U.S.C § 2422(b) carries a maximum penalty of life imprisonment and a mandatory minimum of 10 years. The PSR calculates Mr. Clark's offense level as 38 with an advisory sentencing range of 235 months to 293 months. While Mr. Clark does not object to the accuracy of the calculation, he argues that given his almost zero chance of recidivism, a sentence within the guideline range would be only punitive in nature.

The sentencing guidelines are unable, by themselves, to account for the individual circumstances and peculiar characteristics of an offense—they are a blunt instrument, with

limited ability to incorporate nuance into a sentencing calculation. While retribution is certainly a goal of criminal sentencing, the 3553 factors, as a whole, suggest that a mandatory minimum sentence is appropriate here. These same factors do not justify a sentence suggested by the advisory guidelines.

I. **A SENTENCE OF TEN YEARS, CONCURRENT WITH MR. CLARK'S MARYLAND SENTENCE IS REASONABLE AND APPROPRIATE AND WARRANTED BY THE SECTION 3553 FACTORS.**

    A. <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.</u>

In accordance with 18 U.S.C. 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing sentence. These factors indicate that a 10 year sentence is appropriate for Mr. Clark.

    *1.   Mr. Clark's History, Background and Character*

Mr. Clark was 64 years old when arrested. He spent his 65th, 66th and 67th birthdays behind bars. Based on the 45-year term of imprisonment he received for this same conduct in Charles County, Maryland, PSR ¶ 45 Mr. Clark will almost certainly spend the rest of his birthdays in prison. While his life has been filled with obstacles, he lived much of it the right way.

Mr. Clark has the support of his friends and family, who will help him readjust to society if ever released. Many of them have written letters of support, in which they discuss Mr. Clark in glowing terms. His neighbor describes him as an "honorable individual and valuable member of [the] community" who "has always been there for [him]" (Ex 1A. Jeter letter). This is a common refrain, and from the letters emerge a portrait of a man generous of spirit, whose actions here are met with shock and disbelief. Mr. Clark's colleague believes him to be "a person of high integrity and honesty" and writes that Mr. Clark was "a source of comfort and guidance during

times of bereavement and crisis." (Ex. 1B Blackstone letter). Another colleague calls Mr. Clark a "good human being." (Ex. 1C Fisher letter). Others who have known Mr. Clark for many years describe Mr. Clark with words like, "solid," (Exhibit 1D W. Wye letter) "upstanding," "kind, polite and generous to others," "dependable, reliable, honest, courteous, and trustworthy." (Exhibit 1E Franklin letter).

Mr. Clark built positive relationships with friends and family and became a productive member of society despite a difficult upbringing. He was born into poverty to a teenage mother and partly raised by an alcoholic, abusive father. PSR ¶ 56. It should not be lost on the court that Mr. Clark was also a victim of sexual abuse, having his first sexual experience with a 67-year old woman when he was a young teenage boy.[2] PAI 7-8. Perhaps not surprisingly, there is a strong correlation between victims of sexual abuse and eventual perpetrators of sexual abuse. There is also evidence that a high percentage of male subjects abused in childhood by a female relative became perpetrators.[3] In addition, Mr. Clark was a child and present in the home while his mother was raped. PAI 5. While none of Mr. Clark's experiences justify his crimes, they perhaps provide some insight into why he has ended up before this Court.

Despite the positive relationships he has formed and the large part of his life spent following the law, Mr. Clark's legacy will be defined by his serious transgression. Mr. Clark is cognizant of this fact and accepts it. While he may never again be a member of the community, a mandatory minimum sentence from this Court may give him the opportunity to say good-bye to his friends and family. Despite his crime, Mr. Clark is worthy of that opportunity.

> 2.  *The Nature and Circumstances of Mr. Clark's Role in the Offense*

---

[2] While the PAI includes the alleged encounter in the "Sexual History" section, it is difficult to see how this would not meet the definition of sexual abuse.
[3] Glasser M, Kolvin I, Campbell D, Glasser A, Leitch I, Farrelly S. Cycle of child sexual abuse: links between being a victim and becoming a perpetrator. Br J Psychiatry. 2001 Dec;179:482-94; discussion 495-7. doi: 10.1192/bjp.179.6.482. PMID: 11731348.

Mr. Clark has acknowledged guilt and accepted responsibility before this Court. His criminal conduct is concisely described in the statement of facts and in the Presentence Investigation Report. PSR ¶ 16-21, and Mr. Clark does not dispute these facts.

Mr. Clark continues to be embarrassed and ashamed of his criminal behavior. For someone who by all accounts is a honorable and conscientious person, contributing to the victimization of another is anathema. Moreover, Mr. Clark is keenly aware of how he has let down his family and friends, and permanently affected the victim. Nevertheless, the 45-year sentence Mr. Clark has already received for this offense is more than sufficient punishment.

B. **The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

To be blunt, Mr. Clark likely does not have much life still ahead of him, but that life will be far different from the retirement he had worked towards much of his adult life. If he is ever released from prison he will be a very old man and in poor health. He will also be a registered sex offender. There are significant collateral consequences to be faced by Mr. Clark, in addition to the incarceration he has already experienced and the future incarceration he still faces. The Court is tasked with fashioning a sentence that deters others from engaging in this type of misconduct and protects future potential victims from Mr. Clark. In this particular case, a sentence of 10 years accomplishes both goals.

*1. Deterrence*

Studies concerning deterrence do not support sentencing Mr. Clark to a period of incarceration greater than 10 years. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of

Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1.

Regardless of the studies, arrest and humiliation, more than a year of incarceration, sex offender registration, and an extended period of supervised release are sufficient to deter those who may follow the path of Mr. Clark. For these reasons, any sentence more than the mandatory minimum will be greater than necessary for purposes of achieving the goal of deterrence.

### 2. Protecting the Public

While no sentence would likely have a general deterrence effect on offenders, a sentence of 10 years would serve to protect the public from any future wrong-doing by Mr. Clark. Even assuming that Mr. Clark does not serve the entirety of his 45-year Maryland sentence, Mr. Clark's

age and physical condition alone make it virtually impossible that he would reoffend. This offense, while deeply disturbing, was an isolated period, committed while Mr. Clark was abusing alcohol and struggling with the onset of his neurological disorder. (PSR 5). For reasons that Mr. Clark cannot even properly explain to himself, he dealt with his pain through the illicit relationship with the victim.

Based upon the forensic evaluation conducted by Dr. Irene Guya-Allen, the likelihood that Mr. Clark will reoffend is very low. PAI 15. His "low level of antisocial tendencies and lack of criminal history lowers his risk," as does his age. Id. Combined with his physical condition, which has worsened during his incarceration, and the conditions of supervised release Mr. Clark would be under, he would pose no future danger to the community.

A prison sentence of 10 years, to run concurrently with the 45-year Maryland sentence, will certainly serve as effective difference for Mr. Clark. 1) If Mr. Clark is required to serve his complete Maryland sentence, the reality is that Mr. Clark will never again be a free man. If he is released earlier than 45 years, it would likely be based on health conditions that would prevent him from having the physical ability to reoffend. The requested sentence, the term of supervised release, along with sexual offender registration will proactively address and alter recidivist behavior. In addition to sex offender treatment, which will require him to waive any right to confidentiality and submit to polygraph testing, Mr. Clark will be forced to register as a sex offender and report his residence and place of employment. He will be closely monitored to insure that he is not interacting with underage girls. Mr. Clark will be required to submit to random warrantless searches by law enforcement or probation upon reasonable suspicion that he is violating the law or the terms of his probation. All of these encumbrances will be part of his everyday life. Essentially, his ability to reoffend, even if he so desired, will be almost

9

completely eliminated by supervised release conditions. Quite frankly, there is virtually a zero percent chance that Mr. Clark will ever again be a threat to the community. Therefore, a concurrent sentence of 10 years is a sufficient sentence that is not "greater than necessary."

   c. <u>The Need to Avoid Unwarranted Sentencing Disparities.</u>

In fashioning an appropriate sentence, sentencing courts are to consider "the need to avoid unwarranted sentencing disparities among defendants of similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

According to the Judiciary Sentencing Information referenced in the PSR, the average sentence imposed for those with Mr. Clark's guidelines calculation is 195 months. Those numbers reflect offenders of all ages and health statuses. A sentence of 10 years would be a significant variance, but one anticipated by §5H1.4 in cases of serious health conditions. As such, sentencing Mr. Clark to 10 years would not truly constitute a sentencing disparity.

## **CONCLUSION**

For the reasons discussed above, a sentence of 10 years—the mandatory minimum—is, is reasonable and appropriate. Such a sentence, on its face, may not sufficiently address Mr. Clark's conduct. However, when considering his age, physical health, as well the other factors pursuant to 18 U.S.C. § 3553(a), a mandatory minimum sentence appears more appropriate. Based on Mr. Clark's age, health, law-abiding history, and his contributions to his family and community, more than 10 years of prison would constitute a sentence that is greater than necessary. Accordingly, Mr. Clark respectfully requests that the Court impose the mandatory minimum sentence to be followed by a period of supervised release the Court deems appropriate.

Respectfully Submitted,

SCROFANO LAW PC

BY:

_____/s/_____
Jay P. Mykytiuk [Bar No: 976596]
*Counsel for Charles Clark*
600 F Street NW Suite 300
Washington, DC 20004
jpm@scrofanolaw.com
Ph: 202-630-1522

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of March 2024, I filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system, which system I understand has provided electronic notice counsel of record.

*/s/ Jay P. Mykytiuk*
Jay P. Mykytiuk
